(109 App. Div. 65.)

### WALDORF–ASTORIA SEGAR CO. v. SALOMON et al.

(Supreme Court, Appellate Division. First Department. ·November 24, 1905.)

1. LANDLORD AND TENANT—NEGATIVE COVENANTS BY LANDLORD.

Where a lease stipulated that the premises included were to be used by the lessee for the purposes only of wholesaling and retailing, selling and disposing, of cigars and tobacco, and the lessor stipulated "not to rent any portion of the building and premises of which the store hereby leased is a part to any one for the purposes of wholesaling and retailing cigars and tobacco," such lessor was prevented from renting the premises to any one for the purpose of carrying on a cigar and tobacco business, although it was to be conducted in connection with a general grocery business.

2. SAME—ACTION FOR BREACH OF COVENANT—EVIDENCE.

In an action by a lessee to enforce a negative covenant on the part of the lessor not to rent other parts of the premises for the purposes of wholesaling or retailing cigars and tobacco, evidence considered, and *held* that, although the lessor rented such adjoining premises "to be used by the tenant as one of its branch grocery stores, and for no other purpose," he in fact leased it for the purposes of selling groceries and also cigars and tobacco.

3. INJUNCTION—NEGATIVE COVENANT IN LEASE—ENFORCEMENT.
    Where part of the consideration in fixing the rent reserved by lease
    was a covenant on the part of the lessor not to rent adjoining premises
    for the same business as that conducted by the lessee, a court of equity
    will enforce such covenant by injunction against the lessor and a sub-
    sequent lessee, who took with knowledge that his lease was in violation
    of the existing covenant.
    [Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 124.]

Appeal from Special Term, New York County.

Action by the Waldorf-Astoria Segar Company against Walter J.
Salomon and another. From a judgment for plaintiff, defendants
appeal. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE,
INGRAHAM, and LAUGHLIN, JJ.

Jordan J. Rollins, for appellants.
James W. Gerard, for respondent.

INGRAHAM, J. The action was brought to enforce a negative
covenant in a lease made by the defendant Salomon to the plaintiff,
and the same relief is sought against the appellant Acker, Merrall &
Condit Company, upon the ground that that company has accepted
a lease from the defendant Salomon in violation of the covenant in
the lease to the plaintiff with knowledge of that covenant. Salomon
is the owner of a building at the corner of Forty-Second street and
Fifth avenue, and on the 29th day of April, 1902, he leased to the
plaintiff a store adjacent to the corner store on the said premises,
14 feet in width and about 68 feet in depth on both sides, "to be
used by the party of the second part for the purposes only of whole-
saling and retailing, selling and disposing, of cigars and tobacco and
smokers' articles for the term of ten (10) years from the first day of
September, 1902." The plaintiff being thus limited to the use of the
store that it had leased, the defendant covenanted "not to rent any
portion of the building and premises of which the store hereby leased
is a part to any one for the purposes of wholesaling or retailing
cigars and tobacco, and the said party of the second part [plaintiff]
hereby agrees that it will not enter upon or undertake the manu-
facture of cigars and tobacco in or about the premises hereby leased,
but shall simply conduct a wholesale and retail trade in the afore-
said business; and the said lessor agrees not to consent to other
tenants subletting for purposes of wholesaling and retailing cigars
and tobacco." Under this lease the plaintiff entered into possession
of the premises. The corner of Forty-Second street and Fifth ave-
nue is a busy corner, a large number of persons each day passing
through Forty-Second street, and it is fair to assume that the cove-
nant by which the plaintiff was secured from competition by another
tenant in the defendant's property was a consideration in fixing the
rent reserved; and it is quite evident that this covenant was designed
to prevent competition in the immediate neighborhood of the store
in which the plaintiff expects to carry on its business.

I think, in ascertaining the intention of the parties in making this
lease, we are justified in looking at the situation that existed, and
the business that the plaintiff was to carry on. By this covenant

the defendants agreed not to rent any portion of the building and premises of which the store leased was a part to any one for the purpose of wholesaling or retailing cigars and tobacco, and the landlord further agreed "not to consent to other tenants subletting for purposes of wholesaling and retailing cigars and tobacco." This covenant was not against renting the store for the tobacco business, or to a tenant who would conduct a tobacco business there, but that the landlord would not lease the store for the purposes of wholesaling or retailing cigars and tobacco. It would be a clear violation of the plaintiff's covenant if it established a grocery business in this store, although as a part of that business it sold cigars and tobacco; and it seems to me that it would be a clear violation of the defendants' covenant if they leased an adjoining store to a tenant for the purpose of carrying on the business of wholesaling and retailing tobacco and cigars, although it was in connection with some other business, like the grocery business. It is clear that these reciprocal covenants were intended to prevent the plaintiff from carrying on any business except a cigar and tobacco business, and the landlord from renting the premises to any one for the purpose of carrying on a cigar and tobacco business, whether alone or in connection with another business. A different question would be presented if the defendants had simply agreed not to lease the building for a cigar and tobacco business.

After the execution of this lease, when the plaintiff was in possession of the premises, the landlord executed to the defendant, the Acker, Merrall & Condit Company a lease of the corner store, which immediately adjoined the plaintiff's store. This lease was dated March 4, 1904, was for a term of five years from the 1st of May, 1904, with a covenant for a renewal of five years, and the premises were "to be used by the tenant as one of its branch grocery stores, and for no other purpose." The defendants' lease was, therefore, to run during the whole period of the plaintiff's lease, and the first question to be determined is whether the leasing of this store to the defendant Acker, Merrall & Condit Company, to be used as one of of its branch grocery stores, was a violation of the covenant in the plaintiff's lease that the landlord would not rent any portion of the premises for the purpose of wholesaling or retailing cigars and tobacco. The premises were to be used by the Acker, Merrall & Condit Company as one of its branch grocery stores. That company is a corporation engaged in maintaining in the city of New York and elsewhere wholesale and retail grocery stores. It has been in business many years, and the business that it conducts had an established character. It deals in groceries, wines, and cigars, and in all of its branch stores, so far as appears from the evidence, cigars are sold at retail, and wholesale orders were taken which are filled from its wholesale store. One of its officers testified that the corporation had sold from September 3, 1903, to January, 1905, cigars of the value of $1,782,800, wines and liquors $2,823,555, and groceries $3,100,000, and the amount of cigars sold at retail by the defendant for the same period was $413,000 out of a total retail business of $2,785,000. It was proved that after the making of this lease the Acker, Merrall

& Condit Company fitted up the store for the purpose of selling at retail cigars and tobacco, as well as "conducting the other branches of its wholesale grocery business; that the sale of cigars is a part of an ordinary grocery business; that when it took this lease it intended to sell groceries, wines, and cigars, and that that was the purpose for which the defendant Salomon leased the store to the Acker, Merrall & Condit Company; that prior to making the lease, the company had extensively advertised its business, and in their advertisements had stated that they were the headquarters in New York for imported cigars; that the company had for sale all of the leading Havana brands; that it had five branch stores in New York, one in Yonkers, one in New Jersey, and one on Long Island, and in a cigar price list, which it published and circulated in February, 1903, it stated: "We are headquarters in New York for the consumers of imported cigars," and that "we carry a full line of all the leading Havana factories." In May, 1904, it issued another circular, specifying a large number of different brands of cigars that it had for sale, stating that it conducted 8 stores in New York, one of which was on the corner of Forty-Second street and Fifth avenue (the premises in question), with 11 branch stores outside of New York. Upon this evidence, we think it was clearly established that the defendant Salomon had leased to the Acker, Merrall & Condit Company, and it had leased from Salomon, this store on the corner of Forty-Second street and Fifth avenue for the purpose of selling cigars and tobacco, and that this lease by Salomon was a violation of his covenant with the plaintiff that he would not lease any portion of his building of which the plaintiff's store was a part for such purpose. It is idle to say that because the Acker, Merrall & Condit Company characterized its business as a wholesale and retail grocery business, and sold groceries, wines, and liquors in addition to cigars, it was not selling cigars, and that its lease of the store was not for the purpose of selling cigars. We think, therefore, the court below was entirely justified in finding that this lease to the Acker, Merrall & Condit Company was a violation by the defendant Salomon of the covenant contained in the lease to the plaintiff.

It is now settled in this state that a court of equity will by injunction enforce such a negative covenant, and restrain a party making the covenant from violating it. In Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749, in considering an action to restrain a violation of a covenant somewhat similar to the case at bar, the court say:

"When the inconvenience of the court in acting is more than counterbalanced by the inconvenience of the public if they do not act, the interest of the public will prevail. But even if, upon a trial of the action, specific performance of the contract in its entirety were refused as impracticable, still the bill should be retained as one permitting an injunction, in the sound discretion of the court, to restrain the defendants from violating the negative and several covenants of the Siegel-Cooper Company that it would not 'sell or allow to be sold on its premises during the duration of this [the] contract any other make of paper patterns' than those of the plaintiff. The learned Appellate Division (one of the judges dissenting) overruled the demurrers on this ground, holding that the court should extend its remedy as far as it is able, and thus prevent the principal defendant, not only from making money

by breaking its agreement, but from inflicting a double wrong upon the plaintiff by depriving it of the right to sell, and conferring that right on a business competitor. We think this is a sound and just conclusion, because it will compel the Siegel-Cooper Company to either perform its agreement, or lose all benefit from breaking it, and at the same time will shield the plaintiff from part of the loss caused by the breach if persisted in."

And when that case was again before this court, a judgment in favor of the plaintiff, not only enjoining the Siegel-Cooper Company, but also the Butterick Publishing Company, which was the lessee of the Siegel-Cooper Company, from selling paper patterns upon the premises of the Siegel-Cooper Company, was affirmed; and this case has been followed by the Court of Appeals, so far as it enforced by injunction a negative covenant, in the case of St. Regis Paper Co. v. S. C. Lumber Co., 173 N. Y. 149, 65 N. E. 967. In this case the appellant accepted this lease with full knowledge of the covenant that the landlord had made with the plaintiff, and it executed before the lease was signed an agreement to indemnify the landlord for any expenses that would be incurred by him in consequence of any legal proceedings taken against him by the plaintiff. It is true that the attorneys for the appellant had advised it that the covenant would not cover a case of a grocery store, although cigars were incidentally sold as a part of the grocery business—an opinion in which, for the reasons before stated, we are unable to concur—but the fact that there was such a covenant was known to the Acker, Merrall & Condit Company before they executed the lease. They took it with knowledge of the fact that their right to sell cigars, under the covenant might be questioned.

The judgment that has been awarded in this case does not prevent the Acker, Merrall & Condit Company from carrying on this business at its store, so far as it can do so without violating the covenant by which the landlord was not to lease the property for the purpose of selling cigars and tobacco; and we think that the plaintiff was entitled to such relief as against both defendants, as by such injunction, and such injunction only, can the plaintiff receive the benefit of the contract which it had made, and which the defendant Salomon violated when he made the lease to the Acker, Merrall & Condit Company. Certainly this defendant cannot complain because the court did not go further, and enjoin it from conducting the grocery business, or any business, under its lease upon the premises.

I think the judgment was right, and should be affirmed, with costs. All concur.