In re CONSUMERS' ALBANY BREWING CO.

MURPHY v. WEILL et al.

(District Court, N. D. New York. June 21, 1915.)

BANKRUPTCY ⬡301—POWER OF BANKRUPTCY COURT—ENJOINING VIOLATION OF CONTRACT WITH TRUSTEE.

A brewing company guaranteed a lease of certain premises in consideration of a contract by the lessee, made with the consent of the lessor, to sell no malt liquors except those made by the brewing company. When the lease had about one more year to run, the brewing company was adjudicated a bankrupt, and its trustee, who was authorized to continue the business, thereafter performed the contract. Proceedings were commenced by the owner to dispossess the assignee of the lessee, which were resisted by the trustee. A verbal agreement was then made between the trustee, the owner, and a proposed new tenant that, in consideration of the withdrawal by the trustee of his opposition, the new tenant should enter into a similar contract. This agreement was performed by the trustee, but was repudiated by the other parties. *Held*, that such action deprived the bankrupt estate of a valuable property right, and that the court of bankruptcy had power by injunction to compel the performance of the agreement during the remainder of the term of the original lease; the remedy at law being inadequate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 464; Dec. Dig. ⬡301.]

In Bankruptcy. In the matter of the Consumers' Albany Brewing Company, bankrupt. On application by Edward Murphy, 2d, trus-

tee, for an injunction against Eugene Weill and the German Hall Association. Injunction granted.

This is an application by Edward Murphy, 2d, trustee in bankruptcy of the Consumers' Albany Brewing Company, for an order restraining and enjoining the German Hall Association, owner and lessor of certain premises in the city of Albany, and Eugene Weill, lessee of such premises, as follows: (1) Restraining the lessee from purchasing from any source other than from such trustee of above-named bankrupt the supply of ale and lagers to be sold on the premises above referred to during the existence of a certain lease of said premises; and (2) restraining and enjoining said owner and lessor from permitting the rented premises to be occupied by any person, firm, or corporation, selling ales and lagers, who does not purchase such ales and lagers from the said bankrupt or trustee in bankruptcy; and for such other or further relief as such trustee in bankruptcy may be entitled to.

Leopold Minkin, of Albany, N. Y. (H. D. Bailey, of Troy, N. Y., of counsel), for petitioner.

Chas. M. Friend and John A. Stephens, both of Albany, N. Y., for tenant.

Crawford & Cogan, of Albany, N. Y., for owner and landlord.

RAY, District Judge (after stating the facts as above). On and prior to April 10, 1911, Albany German Hall Association was and now is the owner of certain premises in the city of Albany, N. Y., on and in which was a café, restaurant, banquet hall, bowling alleys, and cellars, with living rooms above, including some barroom fixtures, etc. April 10, 1911, the Albany German Hall Association in writing leased these premises to one Joseph Reniers, of New York City, for the term of five years from May 1, 1911, to April 30, 1916, at an annual rent of $5,000, payable in equal monthly installments in advance. This lease contained a provision that liquor tax certificates for the sale of liquors on such premises issued during such term should be assigned to the lessor as security that the sale of liquors on such premises should not be abandoned by the lessee. If rent was not paid, then, at the option of the lessor, the lease might be terminated. The lease also contained a provision that, if anything detrimental to the German Hall Association occurred on the premises with the consent or sanction of the lessee, then the lease was to become void. The agreements and conditions were to be binding on the successors and assigns of the first party and the heirs, executors, and administrators of the second party. For a good and a valuable consideration Reniers, with the knowledge and consent of said German Hall Association, agreed with the Consumers' Albany Brewing Company that he would sell in such place the ales, beers, and lagers made by said Consumers' Albany Brewing Company only; the manufacture and sale of such ales, etc., being the business in which it was engaged. May 1, 1911, the Consumers' Albany Brewing Company in writing guaranteed to the said Albany German Hall Association the payment of one-half the said rent Reniers was to pay, and notice was to be given to said guarantor by the said owner if rent was not paid. It is plain that it was understood and agreed by the owner, the lessee, and said guarantor of the rent that the lessee was to sell in and on said premises the beers, ales, and lagers made by Consumers' Albany Brewing Company and no oth-

ers. Reniers occupied the premises and complied with this agreement and understanding until March 10, 1914, when he was duly adjudicated a bankrupt.

About the middle of March, 1914, with the knowledge and consent of all parties, one Sanford Eaton took over the lease and agreement and became tenant of said premises, with substantially the same understanding and agreement with the lessor and owner and Consumers' Albany Brewing Company. March 24th said Eaton deposited with said Brewing Company $1,000 and entered into a written agreement with it in substance as follows:

The said Brewing Company caused the liquor tax to be transferred to one Wendell as agent of Eaton, who covenanted to properly conduct the hall, etc., and Eaton covenanted and agreed "to sell, use, and handle in said German Hall the malt products manufactured by said party of the first part (Consumers' Albany Brewing Company) and no other malt products," except permission was given to deal in imported beer sold by Hollander & Co., and, each week, a dark lager, not to exceed one-half barrel, manufactured by Beverwyck Brewing Company of Albany, N. Y.

Hollander & Co. had guaranteed the payment of the half of the rent not guaranteed by Consumers' Albany Brewing Company.

September 15, 1914, said Consumers' Albany Brewing Company was duly adjudged a bankrupt. This court had appointed Edward Murphy, 2d, receiver of the alleged bankrupt corporation, with power and direction to continue the business, and later said Edward Murphy, 2d, was duly elected and appointed trustee and authorized and directed to continue the business.

Later, Eaton, it was claimed, violated his agreement, and German Hall Association, the lessor, sought to dispossess him. The Consumers' Albany Brewing Company was, of course, deeply interested, and claimed that Eaton was not in fault, and proposed to stand behind Eaton and resist such proceedings. This led to an interview and an agreement between the German Hall Association and the Consumers' Albany Brewing Company, including Eaton, by which such dispossession proceedings were not to be contested, and in consideration thereof German Hall Association was not to let into possession of such premises, or lease or let same to any person who would not agree and bind himself to sell therein the ales, beers, and lagers manufactured by the Consumers' Albany Brewing Company only (with exception named), and to this Weill, proposed lessee, consented. Thereupon the trustee in bankruptcy forbore to resist the expulsion of Eaton, and the dispossession proceedings went to judgment without opposition, and an agreement was made between German Hall Association and Weill, leasing to Weill such premises, but the rights and interests of the Consumers' Albany Brewing Company and the trustee in bankruptcy were ignored, and both lessor and proposed lessee refused to stand by or recognize the verbal agreement that the new lessee should sell the beers, ales, and lagers made by the Consumers' Albany Brewing Company only, and in effect propose to ignore and repudiate same. The agreement referred to, made by German Hall Association, Weill, and the trustee in bankruptcy, was not reduced to writing.

The real question is: Has this court power to enjoin the owner of

these premises, German Hall Association, from allowing same to be occupied by a tenant who will not enter into a contract as a condition of its lease, or with whom in making a lease the said association will and does not make a condition that such tenant must sell in such premises the ales, beers, and lagers made by the Consumers' Albany Brewing Company? The business of the Consumers' Albany Brewing Company is now being run and continued by the trustee in bankruptcy under the authority and direction of this court, and was being so conducted when the agreement was made between the owner, the trustee of the Consumers' Company, and the proposed tenant that such ales, beers, and lagers should be sold on the premises by the new tenants in case opposition to the ejection of Eaton was abandoned by the said trustee.

The right to have such ales, beers, and lagers sold on the premises to the exclusion of others was a valuable asset and right, and formed a part of the value of the property rights which had come into the possession and under the control of this court. Any action which interfered with and limited the market and sales of beer, etc., being made and sold by the trustee by authority of the court, injured the estate of the bankrupt, lessened its value—both its present earning power and value and its selling value as a going business and concern. The value of a manufacturing business depends, to an extent, on whether it is a going concern, the extent and volume of its business, the number of its customers, and whether or not such customers are permanent. Existing contracts for the sale and delivery of beer, ales, and lagers at future times, as required and as the business of the purchaser may require, and which business and its success will also determine the amount required and to be taken by such purchaser for his trade, are a valuable asset, and if the bankrupt estate, by its trustee, is in condition to perform such contracts on its part, they may be performed, and the other party compelled to perform, or enjoined from violating, such contracts, or compelled to make compensation in damages. Where there is a full, complete, and adequate remedy at law for the breach or threatened violation of a valid contract, a court will not ordinarily grant equitable relief by way of injunction, either mandatory or prohibitive.

An action for the specific performance of a contract is many times and usually permissible when same relates to real estate, and frequently when it relates to personal property. This pending proceeding is in the nature of an action to compel specific performance by the German Hall Association and Weill of this verbal agreement based on a valuable and good consideration. The Consumers' Albany Brewing Company fully performed—did all it agreed to do. The German Hall Association and Weill contend that no binding agreement was made; that there was an agreement to make a contract, but that none was made. But everything was agreed upon. The Consumers' Albany Brewing Company was to withdraw opposition to the removal of Eaton, which it did. German Hall Association agreed that the new tenant should sell the product of Consumers' Company only, except imported beer, and the price the tenant was to pay was made known

and agreed upon—pronounced satisfactory. Weill, the proposed new tenant, was called in, and the terms made known and he consented thereto. He was to go the next day and settle on details, if any, and, by fair inference, the necessary papers were then to be executed. Instead of doing so, the verbal agreement was deliberately ignored, and, although Consumers' Company kept its agreement, the German Hall Association not only availed itself of the agreement to eject Eaton, but entered into a lease with Weill without the knowledge or consent of the Consumers' Company, absolutely ignoring the Consumers' Company and the trustee in bankruptcy and their rights.

It is true that the making of the agreement and contract between Weill and Consumers' Company was not consummated by the execution of a written paper, but if there was anything upon which the minds of the parties had not met the evidence fails to disclose what it was. Until a long time thereafter, and after excuses for delay had been made, the Consumers' Albany Brewing Company and its trustee in bankruptcy were not notified of the purpose of Weill and German Hall Association not to execute the agreement. The lease actually entered into between the German Hall Association and Weill was for the unexpired term of the Reniers lease, transferred to Eaton, ending May 1, 1916, with the privilege of renewal for five years. This court could not undertake for a long term of years to supervise the execution and enforcement of a long term contract and agreement, or bind the trustee and estate represented by him to continue the production of ales, beers, and lagers and the furnishing of same to the tenant of these German Hall premises, or even bind the purchaser of the assets and business of the Consumers' Albany Brewing Company so to do, for a long term of years. Who would purchase, the terms of sale and purchase, and the kind and quality of ales, beers, and lagers the purchase would produce, and the price at which same should be furnished, are matters a trustee in bankruptcy should not undertake to determine, if to extend over a term of years.

But here it was competent for the trustee to contract to enforce the existing term until its termination, May 1, 1916. The estate he represented was able, under the orders and direction of the court to fulfill all the obligations of the contract, the performance of which it had guaranteed, and into the performance of which, the evidence shows, it had put money. In Hair Company v. Huckins, 56 Fed. 366, 5 C. C. A. 522, it was held that an injunction would not lie to restrain the breach of a contract whereby defendant agreed that for the term of five years he would use plaintiff's hotel registers in his business, and no others, as plaintiff had adequate remedy at law. In Steinau v. Cincinnati Gas, Light & Coke Co., 48 Ohio St. 324, 27 N. E. 545, S. contracted with the light company, in consideration of a reduced price for gas, that he would not use electric material or power for general illuminating purposes, the quantity of gas used not to fall below a specified amount. S. violated his agreement, and the company sought to enforce performance in equity. It was held there was an adequate remedy at law. In Newport City v. Newport Light Co., 84 Ky. 166, the city made a contract with a gas company to furnish the city gas-

light for a term of years, with an *exclusive* right in the company to use the streets for such purpose. Held, the city might be enjoined from conferring the same right on a competing company.

In 1 Beach on Injunctions, 439, § 437, it is said, citing cases:

"A court of equity will interfere by injunction, at the suit of a lessee who claims an exclusive contract right to carry on a particular business on the leased premises, to prevent another lessee, having notice of that right, from violating it; the jurisdiction in such a case being analogous to the remedy by specific performance, and founded also on the necessity of preventing a constantly recurring grievance, for which there can be no adequate compensation in damages. Where an hotel proprietor has granted one telegraph company the exclusive privilege of establishing and operating an office upon his premises, equity will interfere by injunction to prevent a breach of the contract in the form of an extension of the same facilities to another and a rival company; the remedy at law of the party having the first and unquestioned right being inadequate."

In 1 Joyce on Injunctions, 646, § 429, it is said, citing cases:

"An injunction to prevent the breach of a contract is a negative specific enforcement of it, and the test of the jurisdiction of equity to grant such an injunction is the inadequacy of the legal remedy."

See Dills v. Doebler, 62 Conn. 366, 26 Atl. 398, 20 L. R. A. 432, 36 Am. St. Rep. 345; Pom. Eq. Jur. § 1341; Morris Canal & Banking Co. v. S. & M., 5 N. J. Eq. 203.

In General Electric Co. v. Westinghouse Electric & Mfg. Co. (C. C.) 144 Fed. 458, this court considered this subject, citing many authorities, at considerable length. In Waldorf Astoria Segar Co. v. Salamon, Impleaded, 109 App. Div. 65, 95 N. Y. Supp. 1053, affirmed 184 N. Y. 584, 77 N. E. 1197, it was held that:

"A court of equity will, by injunction, enforce a negative covenant that real estate is not to be used by the lessor, or leased for certain purposes."

In the same case it was held that a lessee who takes a lease of the premises with knowledge of such a covenant will be enjoined from violating same.

It is immaterial that Consumers' Albany Brewing Company was not lessee and occupant of these premises. It was a guarantor of the Reniers lease, assigned to Eaton, put money into it, and was vitally interested in its performance. The new agreement was of great concern and interest to the trustee in bankruptcy appointed by this court, and as this trustee in good faith surrendered a valuable right on the faith of such new agreement which concerns an estate in the hands of and under the protection of this court, and which will suffer pecuniarily if the injunction is not granted, and as the damages are not capable of easy ascertainment, if at all, and the lease will end May 1, 1916, unless a purchaser of the premises elects to continue it for a further term of five years under the option, and the trustee in bankruptcy has elected to stand on this agreement, which has been sanctioned by the referee having charge of this matter, the injunction prayed for is granted, and there will be an order accordingly.