The Peoples Trust Company, Appellant, *v.* Schultz Novelty and Sporting Goods Company, Respondent.

Contract — unfair competition — landlord and tenant — pleading — evidence — question of fact — liability for use and occupation not liability for rent under a lease — agreement to pay monthly sum in consideration of promise not to let adjoining premises for competing business during term of lease of promisor ends with termination of lease for violation of its terms — such a defense new matter and is not presented by mere denial in answer that agreement is in full force and effect — duty under agreement not fully discharged by inserting in sublease clause that subtenant should not sell similar merchandise — not chargeable with sale of overlapping goods without its knowledge — entitled to prove absence of consent — exclusion of evidence of absence of complaint as to sale by subtenant of similar goods, error — sale of same things in both stores not conclusive on question whether business is the same or similar — question whether sale of same articles was incidental or a distinct branch of the business for the jury.

1. Liability for use and occupation is not liability for rent under a lease. The force of an agreement to pay a monthly sum to the plaintiff's assignor, lessor of premises adjoining those occupied by defendant, in consideration of their promise not to let any portion of their premises " during the term of their lease to any person for the use of any business of the same or similar nature as that conducted " by defendant, ends, therefore, when the lease terminates, and if the defendant, which, since the making of the agreement has acquired title to the premises leased by plaintiff's assignor, has effectively terminated the lease for violation of its terms, a recovery may not be had by plaintiff on the agreement after that date. But a mere denial that the agreement is in full force and effect does not present the question although the defense rests on new matter outside the agreement sued on.

2. A contention that a provision in a sublease of the premises that the subtenants should not " sell or offer for sale any merchandise similar to that now sold or offered for sale " by defendant, fully discharged the duty owing to defendant under the agreement, cannot be sustained, if it appears the lessor knowingly permitted violation of the condition. It should not, however, be charged with liability when the competing business covenanted against is carried on without its knowledge or approval. In support of plaintiff's allegation of full

performance it was entitled to prove the absence of such consent or acquiescence, and the exclusion of evidence that no complaint was made by defendant that the subtenant was engaged in the sale of similar goods was error.

3. On the question whether the business of the subtenants is the same or similar to that of defendant, the fact that the same things are sold in both stores to some extent is not conclusive. The purely incidental and occasional sale of such articles, in the absence of an express covenant against the sale thereof, would not be a breach of the agreement not to carry on a competing business. On the other hand, if the sale of such goods is a distinct branch of the competing business, the subtenants are to that extent carrying on the same business, whether on a large or small scale. The question of distinct branch or incidental sales was for the jury and it was error for the Appellate Division, having reversed on the facts, to direct a dismissal of the complaint.

*Peoples Trust Co.* v. *Schultz Novelty & Sporting Goods Co.*, 216 App. Div. 476, modified.

(Argued October 22, 1926; decided November 23, 1926.)

APPEAL from a judgment, entered May 6, 1926, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Conrad Saxe Keyes* for appellant. The agreement between Miller Bros. and the defendant did not require Miller Bros. to actually prevent violation of the rights of the Schultz Novelty and Sporting Goods Company, Inc., by its subtenant. (*Ashby* v. *Wilson*, L. R. 1 Ch. Div. [1900] 66; *Kemp* v. *Bird*, 5 Ch. Div. 549; *Staff* v. *Bemis Realty Co.*, 111 Misc. Rep. 635; *Lawrence* v. *Fox*, 20 N. Y. 268; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Clark* v. *Devoe*, 124 N. Y. 120; *Norman* v. *Wells*, 17 Wend. 136.) The business conducted by Silver & Herman did not violate the agreement of Miller Bros. that " they will not let any portion of the premises No. 120 Nassau Street to any person whomsoever, for the use of any business of the same or similar nature as that conducted by the party of the second part." (*Greenfield* v. *Gilman*, 140 N. Y.

168; *Breck* v. *Ringler*, 129 N. Y. 656; *Broadbooks* v. *Tolles*, 114 App. Div. 646; *Goose* v. *Leonard*, 14 Ky. L. R. 174; *Waldorf Astoria Segar Co.* v. *Salomon*, 109 App. Div. 65.) The defense as to the termination of the lease was properly overruled by the court. (*Matter of Gutman*, 197 Fed. Rep. 472; *Gazlay* v. *Williams*, 210 U. S. 41.)

*David Paine, Edward G. MacArthur* and *Walter A. Mulvihill* for respondent. There is a breach of the agreement sued on, as matter of law, in that the present occupants, Silver & Herman of 120 Nassau street, are selling the same and similar articles sold by the defendant. (*Ludwig Bauman & Co.* v. *Manwit Corporation*, 213 App. Div. 300; *Waldorf Astoria Segar Co.* v. *Salomon*, 109 App. Div. 65; *Cohen* v. *Peterson*, 211 N. Y. Supp. 499; *University Club of Chicago* v. *Deakin*, 265 Ill. 257.) The service of notice by the defendant on the lessee, Hirschberg, terminated the lease, and, therefore, plaintiff cannot recover on the agreement. (*Miller* v. *Levi*, 44 N. Y. 489; *507 Madison Ave. Realty Co., Inc.*, v. *Martin*, 200 App. Div. 146; *Lonas* v. *Silver*, 201 App. Div. 383; *Childs Co.* v. *Burke*, 110 Misc. Rep. 103; *Matter of Sweeney*, 94 Misc. Rep. 617; *Niagara Falls H. P. & Mfg. Co.* v. *Schermerhorn*, 60 Misc. Rep. 209; *Martin* v. *Crossley*, 46 Misc. Rep. 254; *Ronginsky* v. *Grantz*, 39 Misc. Rep. 347; *Cottle* v. *Sullivan*, 8 Misc. Rep. 184.) The construction of the agreement and the question whether or not Silver & Herman were engaging in a business similar to that conducted by the defendant were for the court. (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341; *Brady* v. *Cassidy*, 104 N. Y. 147.)

Pound, J. On November 12, 1921, a partnership known as Miller Bros. was the lessee of premises No. 120 Nassau street, borough of Manhattan, and defendant was the lessee of adjoining premises No. 122 Nassau street where it was engaged in the business of " toys, sporting goods and kindred articles." The parties entered into an agreement that Miller Bros. " will not

let any portion of the premises No. 120 Nassau street during the term of their lease to any person for the use of any business of the same or similar nature as that conducted by " the defendant. In consideration thereof the defendant agreed to pay Miller Bros. $300 a month.

The plaintiff sues as assignee of the rights of Miller Bros. under this agreement alleging full performance of all the terms of the agreement to be performed by Miller Bros. and that the same is in full force and effect and a default on the part of defendant in payment of the $300 a month from September 1, 1922, to August 1, 1923, and demands payment accordingly. The answer denies performance of the agreement and that it is in full force and effect. The trial justice left to the jury the question whether there had been a breach of the agreement against letting for a business of the same or similar nature. The jury found for the plaintiff. The Appellate Division held as matter of law that the agreement had been breached, reversed the judgment on the law and the facts and dismissed the complaint.

We are asked to consider whether the agreement between Miller Bros. and defendant was in force for the period covered in the complaint. Defendant contends that the Miller lease was terminated thirty days after September 7, 1922, under the following circumstances: On August 18, 1922, one Hirschberg owned the Miller lease which by its terms expired in 1928. He sublet the premises to Silver & Herman, who are the tenants charged with improperly competing with defendant, for the balance of the term, without the landlord's consent, contrary to the express provisions of the original lease. Meanwhile defendant had become the landlord of the premises subject to the Miller lease. On September 7, 1922, it gave notice to Hirschberg that it elected to terminate the lease at the expiration of thirty days thereafter and then instituted dispossess proceedings against him. A jury trial was had in the Municipal Court and the jury dis-

2

agreed. The proceedings were pending when this case was tried. Hirschberg and his subtenants were still in possession. The agreement in suit recites only that the lease continues " to on or about 1928." The provisions as to the term of the lease are not incorporated in the agreement except by this reference. The lease provided that it might be terminated on notice if the lessee defaulted in the performance of any of the agreements therein contained. If it was terminated on or about October 7, 1922, a recovery could not be had for the full amount sued for. If the lease was terminated as matter of law at the expiration of thirty days after the service of the notice (*Miller* v. *Levi*, 44 N. Y. 489) the agreement to pay $300 a month ceased when the lease expired. The duty of the subtenants to continue to pay for use and occupation of the premises until dispossessed impressed the courts below. They held that the lease continued in operation " as a practical matter." But liability for use and occupation is not liability for rent under the lease. The force of the agreement sued on ends when the lease terminates and if the defendant has effectively terminated the lease a recovery may not be had on the agreement after that date. But a mere denial that the agreement is in full force and effect does not present the question as the defense rests on new matter outside the agreement sued on.

The question arises as to the duty of the lessor to enforce the covenant. The lease to the subtenants provided that the premises should be used and occupied as a retail haberdashery, " provided, however, that said tenants do not sell or offer for sale any merchandise similar to that now sold or offered for sale " by the defendant. Plaintiff contends that Hirschberg discharged his duty to defendant when he made this covenant with Silver & Herman and that he was not required to do more; that the agreement in suit has not been broken because it was as to letting only and not as to use. Some support for this contention is found in the English case

of *Ashby* v. *Wilson* (1900) (1 Ch. 66) but by way of dictum merely. The rule stated in *University Club of Chicago* v. *Deakin* (265 Ill. 257), which was an action on a lease, is relied on. The court said:

" By the terms of its contract with plaintiff in error it agreed that no other portion of its premises should be leased to anyone engaged in the prohibited line of business, and if it failed to prevent any subsequent tenant from engaging in [such business] it did so at the risk of plaintiff in error terminating his lease."

Properly construed, this is an authority for the plaintiff. A lessor in like case may not rest its duty on mere words and collect $300 a month for putting a clause in a lease when he knowingly permits the violation of the condition. But when the lessor imposed a proper restriction upon the business to be transacted by the subtenant he should not be charged with liability for the sale of overlapping goods without his knowledge or approval. A breach by the tenant irrespective of notice to the lessor was not such a breach as to discharge defendant. The court excluded evidence that no complaint was made by defendant that the subtenant was engaged in the sale of similar goods. The sale of competing articles was a matter for defendant to make a complaint about. Otherwise a secret sale of competing goods would defeat plaintiff's rights. To permit or to fail to prevent the sale of competing goods obviously implies some affirmative act of acquiescence or consent on the part of the lessor either express or implied. (*Lucente* v. *Davis*, 101 Md. 526.) In support of plaintiff's allegation of full performance it was entitled to prove the absence of such consent or acquiescence.

Defendant sells $170,000 of goods in a year. The value of the goods which compete with the sale of sporting goods by the subtenants is, however, less than ten per cent of their entire business. Silver & Herman have a business of about $125,000 a year. The competing articles

amount to not more than five per cent of their sales. The question to be determined on this branch of the case is whether the agreement of Miller Bros. has been violated.

The language of the sublease indicates what was in the mind of the parties thereto. The subtenant was not to " sell or offer for sale *any merchandise similar to that now sold or offered for sale by the defendant.*" The contract sued on, however, uses more general language and thereon the parties hereto must rest. Contrary to the English rule of remedial rights as stated in *Ashby* v. *Wilson* (*supra*) defendant presumably might bring an action under the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) to restrain the subtenants from selling bathing suits, etc., but that is not the question before us. The question is whether the business of the subtenants is the same or similar to that of defendant. The similarity is based on the fact that along with a general haberdashery business they sell bathing suits and belts, sweaters and jock straps and other articles which come under the classification of " sporting goods and kindred articles." If it were not for the agreement Silver & Herman might sell what they pleased and call their store what they pleased and it appears that they have carried this kind of goods in other similar stores.

The business of haberdashery and the business of selling toys, sporting goods and like articles are not similar although they may in some respects overlap. The same things might be sold in both stores to some extent. The purely incidental and occasional sale thereof would not be a breach of the agreement not to carry on a competing business. (*Breck* v. *Ringler,* 129 N. Y. 656; *Greenfield* v. *Gilman,* 140 N. Y. 168.) Names do not count. The substance must be considered. Who can delimit and classify the articles which belong exclusively to one business and may not be carried by another without destroying its character? Drug stores and candy stores both sell soda water and similar innocu-

ous and lawful drinks. They also sometimes sell light lunches. The sales are of similar articles but are the businesses similar? Is a drug store or a candy store carrying on a business similar to a restaurant because they all serve and sell soft drinks and light lunches? Possibly if the drug or candy business were a mere incident to the restaurant feature, but not necessarily. If the sale of sporting goods is a distinct branch of the competing business the subtenants are to that extent carrying on the same business whether on a large or small scale. (*Waldorf-Astoria Segar Co.* v. *Salomon*, 109 App. Div. 65; affd., 184 N. Y. 584; *Fitz* v. *Iles*, [1893] 1 Ch. 77.) That the subtenants carried a considerable line of sporting goods is not denied. That they featured the sale of bathing suits appears. But the case as matter of law is unlike *Fitz* v. *Iles* (*supra*) which was one of construction and not of remedy. There defendants, dealers in tea, coffee and groceries, were bound by a covenant in the lease of their house not to use the same as a coffee house. They intended to sell light refreshments to their customers. LINDLEY, L. J., said:

"We must use our common sense. I think this case is really one of degree, and the conclusion to which I have arrived is that in the fair meaning of this covenant the defendants are carrying on two businesses, one of which is a grocer's business and the other of which is a coffee-house business, though, perhaps, not a very extensive one. They do not sell everything which coffee-house keepers sell; a coffee-house keeper need not sell all sorts of meats and so forth. He may confine himself to light refreshments such as these. * * * The covenant is applicable."

Here we find no covenant in the agreement sued on against using the premises for the sale of sporting goods. The question is whether the business of the subtenants taken as a whole was of the same or similar nature as that conducted by the defendant. While the subtenants were carrying on what would be generally known as a

[244 N. Y. 22]              Statement of case.              [Nov.,

haberdashery and were also selling sporting goods such sale of sporting goods did not as matter of law transform their business from that of a haberdashery to that of a house for the sale of sporting goods. To a certain extent the business overlapped but the haberdashery did not lose its characteristics as such because it also incidentally carried and sold some articles similar to some of those sold by the defendant.

The question of distinct branch or incidental sales was for the jury. The reversal herein was on the law and the facts.

The judgment of the Appellate Division should be modified so as to grant a new trial and as so modified affirmed, with costs to appellant.

HISCOCK, Ch. J. CARDOZO, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment accordingly.