Louis B. Weinberg, Plaintiff, *v.* Mark Edelstein, Doing Business under the Name of Jay-Lynn Ladies Wear, Defendant.

Supreme Court, Special Term, New York County, January 18, 1952.

*Samuel Rubin* for defendant.

Matthew M. Levy, J. The plaintiff and the defendant operate retail stores in the same building. The plaintiff's lease,

entered into in June, 1949, for a five-year term, entitles him to sell " ladies dresses, coats and suits and ladies sports clothes ". The landlord in that lease covenanted with the plaintiff " not to rent any other store in the same building for the retail sale of ladies dresses, coats and suits ". The defendant's lease was assigned to him in June, 1950, for somewhat more than a five-year term, and authorized the defendant to sell at retail " ladies hosiery, gloves, lingerie, brassieres, girdles, bathing suits, sweaters, bags and accessories, blouses, skirts and beachwear ". This assignment was made to and accepted by defendant after discussion and agreement among plaintiff, defendant and defendant's predecessor, as to the wording of the use clause, with knowledge on defendant's part of the restrictive covenant in plaintiff's lease, and with knowledge on plaintiff's part that the defendant's assignor had, for some time, sold skirt-blouse combinations.

Defendant is displaying, offering for sale and selling, among other items, matched skirts and blouses. Claiming that these are in reality two-piece dresses — the sale of which is forbidden the defendant — the plaintiff has brought this suit for an injunction to restrain the defendant from thus violating the restrictive covenant. The applicable legal principles are not in dispute. Restrictive covenants are enforced by injunction against takers with notice (*Hodge* v. *Sloan,* 107 N. Y. 244, 250), and one who subsequently rents premises with knowledge of a prior restrictive covenant agreed to by his lessor in favor of another tenant will also be enjoined (*Waldorf-Astoria Segar Co.* v. *Salomon,* 109 App. Div. 65, 70, affd. 184 N. Y. 584). The issue is the applicability of the covenant, and I must endeavor to ascertain, from the evidence before me, the meaning of the terms used in the leases so as to fulfill the intent of the parties (*Bovin* v. *Galitzka,* 250 N. Y. 228, 232; *Kitching* v. *Brown,* 180 N. Y. 414, 427; *Clark* v. *Devoe,* 124 N. Y. 120, 124).

Plaintiff asserted during the trial, in modification of the demand in the complaint, that he is entitled to an injunction restraining the defendant from selling one-piece or two-piece dresses of any kind, and also from selling to the same customer at the same time skirts and blouses made from the same material or otherwise co-ordinated, matched or related by ornamentation, decoration, embroidery, trim or design — because, as claimed by the plaintiff, the combination thereby became a " dress ". The defendant claims no right to sell conventional one-piece dresses,

that is, garments which are manufactured in a variety of styles, fabrics and designs, and which have the common characteristic of being used as a single outerwear article, and of covering the woman's form from above the bust to the hemline. Nor does the defendant assert the right to sell the conventional two-piece dress, consisting of a bottom or lower garment plus an upper vest, jacket or bolero.

The problem presented here is whether, when a restrictive covenant interdicts the sale of " dresses ", it also necessarily precludes the sale of a " blouse-skirt combination ", sometimes also called a " dress ". I cannot rely upon naked dictionary definitions. However incongruous it may seem to purists in the spheres of lexicography and logic, the legal conclusion may well be that, under certain conditions, a matched skirt-and-blouse garment, although identical with a two-piece dress of the same material, does not come within the restriction — and so, theoretically, a " dress " is not a " dress ". Whether such two-piece ensemble should be considered a dress depends in large measure on the practices and customs of the trade. To resolve the issue requires some consideration of the background of the vast and changing ladies' garment industry, and proof was presented to me in that regard.

In that industry there has been a long-established division between houses which manufacture dresses, and sportswear houses which manufacture skirts and blouses. (There are separate blouse and skirt houses also.) Organization of the manufacturing industry, whether from the angle of the trade association or of the employees' unions, has corresponded to this same division; there are a skirt union, a blouse union and a dress union — each with separate collective bargaining machinery and contracts entered into with its own respective employers' group. Two-piece dresses have long been and now are manufactured by dress houses, and usually consist of a skirt with a bodice or other upper raiment having almost-complete unification of style, ornamentation, color and material. These two-piece dresses are sold at a single-unit price, and it is the custom of women to wear the two-piece costume as a unit. The sportswear houses, on the other hand, had been accustomed to manufacture unrelated skirts and blouses and to charge a separate price for each item — skirt or blouse — and it has been the habit of women to wear each without relation to the other.

A recent style trend, emanating from the sportswear houses, and begun some time before the execution of the present leases, has resulted in the manufacture of " separates ", " mix-matches ", " co-ordinates ", " pair-offs ", or " matchmates ", as they are variously termed. These are matched skirts and blouses which can be worn together or in combination with other blouses and skirts. Such garments are generally made by other than dress manufacturers, usually sportswear houses, and comprise, as wholly separate units, skirts, blouses, sweaters and other similar articles, none of which is adapted for use as a sole article of outerwear, but must be worn together — a skirt plus an upper garment. They are not neccessarily worn in any specific combination; they may be worn either in matched pairs, in contrasting pairs, or in any combination of units, to suit the whim of the wearer. Sizes, too, may vary — for example, a size twelve blouse may be matched with a size fourteen skirt of the same pattern, which, I am told, is a great advantage to many women; while, on the other hand, the entire costume must be of the same size when a two-piece dress is purchased. That matched skirts and blouses are considered sportswear can be noted in large metropolitan retail department stores, where blouses and skirts (although matched) are sold in the sports-wear section, and not in the dress division — and where there are separate and even competing buyers, stylists, advertisers and salesmen. As " separates " are actually blouses and skirts, manufactured and sold by sportswear, and not generally by dress, houses, the two parts of the garment are priced individu-ally and both the retailer and the consumer can buy blouse and skirt separately or in combination.

The purpose of this style change was to permit the purchase at individual prices of various skirts and blouses, which, when worn together, look like dresses, and yet at the same time can be worn separately with other garments — thus increasing the number, utility and variety of the garments which the ingenious and stylish American woman, ever desirous of being variedly well-dressed, has at her disposal — and this, notwithstanding a limited pocketbook. The main characteristic, therefore, of " separates " is that, although approximating the outward appearance of dresses, they are really skirts and blouses that can be worn with other blouses and skirts. Because of the inability of the consumer to distinguish, at times, between the two-piece dress and the two-piece ensemble, it may be that the plaintiff will be competitively injured. But I cannot hold,

under the language used and the facts proved, that the defendant must ignore an almost universal trend in the sportswear industry, even though the garments he sells tend to resemble the apparel sold by the plaintiff. At the time when the leases were made, the style change had already become established—and the language of the restriction in plaintiff's favor and the use clause granted defendant (both of which the plaintiff· in a measure formulated) should and could have been more precise.

If the restrictive covenant did not merely employ the generic and currently ambiguous term of " dress ", but clearly forbade the sale of " blouse and skirt combinations ", the conclusion might be different. But the covenant is not so worded. Just as certain as it is that plaintiff has the exclusive right to sell ladies' dresses, coats and suits, equally certain is it that the defendant has the undoubted right to sell, among other things, ladies' sweaters, blouses and skirts. Reading the two leases together, as I think we should, I must endeavor to make out some construction which will not do violence to the language of either contract, and yet give appropriate effect to the words used in each. It is to be noted too that the use clause in the plaintiff's lease is broader than the restrictive covenant invoked against the defendant. While the plaintiff may sell " ladies dresses, coats and suits *and ladies sports clothes* " (italics supplied), the defendant is prohibited from selling " ladies dresses, coats and suits " only. The omission of " ladies sports clothes", it seems to me, is significant in the light of the use clause in the defendant's lease — including, among other things, " sweaters ", " blouses, skirts and beachwear " — which provision was arranged for after discussion with the plaintiff.

Due to the policy of our law against unduly restricting the free use of land (*Cook* v. *Murlin,* 202 App. Div. 552, 557, affd. 236 N. Y. 611; *Schoonmaker* v. *Heckscher,* 171 App. Div. 148, 151, affd. 218 N. Y. 722; *Val-Kill Co. v. Cities Service Oil Co.,* 278 App. Div. 164, 166; *Schuman* v. *Schechter,* 215 App. Div. 291, 294), the covenant is construed strictly against the person seeking its enforcement, particularly when the intent of the restriction is not clear (*Buffalo Academy of Sacred Heart* v. *Boehm Bros.,* 267 N. Y. 242, 249; *Baumert* v. *Malkin,* 235 N. Y. 115, 120; *Johnson* v. *Colter,* 251 App. Div. 697, 699; *Private A. S. Realty Corp.* v. *Julian,* 214 App. Div. 628, 629). I am of the view that the garments defendant has been selling are not " dresses ". In any event, I am certain that they are " skirts " and " blouses ". As such, I hold that they are not affected by

the restrictive covenant. In my view, the two piece ensembles may truly be considered "dresses", within the meaning of the contract, only when made by a dress manufacturer, designed and styled as to be normally worn together as a single costume and not normally intended to be worn in combination with other outerwear garments, passing through the channels of trade in the dress industry as distinguished from the sportswear industry, and sold both to the dealer and to the consumer as a single unit at a single price. At the very least, the commodities overlap. The line of commercial and physical demarcation between a traditional two-piece dress on the one hand and an ensemble of matched skirt-and-blouse on the other seems to have become somewhat vague and uncertain. To the extent of such overlapping, the plaintiff is subject to permissible competition. Restrictive covenants have not been enforced by the courts when articles protected by the covenant and articles sold by the defendant do overlap (*Peoples Trust Co.* v. *Schultz Novelty & Sporting Goods Co.*, 244 N. Y. 14, 20-21).

The application for the injunction as prayed for is denied. However, the defendant may not compel the purchase of a skirt and blouse combination as a unit, and is to permit the purchase by his customers of skirts and blouses separately or together, as the customer wishes — and in any case, each at an individual price.

During the trial, some issue was raised as to the right of the defendant to sell "sun-backs". These garments expose a large part of the female back, and frequently of the upper front, and are sometimes of one piece and sometimes in the form of a skirt and separate halter. They are not normally worn at business or social functions; they are sometimes worn informally at home, and generally are used at beach or camp. They have some of the physical characteristics of dresses. But they were called "sun-togs" by the defendant and are claimed by him to have been developed from beachwear garments. It is not necessary, however, to arrive at a judicial conclusion as to the status of this type of apparel, as the defendant on final submission has agreed to forego the claimed and disputed right to sell such articles.

This opinion constitutes the decision of the court. Submit judgment on notice accordingly.