Charles Margett, J.
This is an action to restrain the defendants from permitting the sale at retail of a substantial number of grocery and dairy items, in connection with the operation of a retail meat market, and for damages resulting from such sale.
The defendant, 89th Jamaica Realty Co., the owner of premises containing a number of stores, is the lessor of one of the stores occupied by the plaintiffs Murray and Pearl Snyder as lessees. This tenancy is subject to the terms of a lease, dated October 25, 1950, entered into by the predecessors of the lessor and lessee respectively. The 39th paragraph of the said lease provides as follows: “ The landlord covenants that it will not, after the date hereof, lease any portion of the premises controlled by it in the building known as the Waldron Section of the Bus Terminal Building, of which the demised premises form a part * * * for a retail dairy or grocery store. The possession or sale of some of the articles of merchandise as are *405 commonly carried in grocery or dairy stores by other tenants conducting a different type of business or store in the aforesaid building, of which the demised premises are a part, shall not be construed to be a violation of this covenant.” (Emphasis supplied.)
On or about August 3, 1959 the defendant landlord entered into a lease with the defendant Woodbury Meat Co., Inc., for one of the stores in the building. Paragraph 2 of said lease provided, “ Tenant shall use [this store] * * * for the retail sale of fresh and frozen meats and meat products for off premise consumption, and delicatessen, poultry, and other meat and meat products for off-premise consumption.”
Paragraph 45 of the lease provided, 1 ‘ Landlord herewith gives to Tenant the right to sell other food items which are incidental to the main purposes as set forth in [par.] 2 hereof, provided that the possession and sale of such food items shall be subject to the provisions of [par.] 39 of the Agreement of Lease * * * made between the Landlord and Murray and Pearl Snyder * i! *. Tenant agrees that it will comply with the provisions of said Paragraph 39 as referred to above and herewith acknowledges receipt from Landlord of a copy of said [par.] 39 of said lease.”
Woodbury Meat Co., Inc., entered into possession and began doing business on or about December 1, 1959. Soon thereafter the plaintiffs discovered that the Woodbury Meat Company was handling what plaintiffs claim was an extensive line of dairy and grocery products, and through their attorney, by letters dated January 13,1960 and February 3,1960, notified the defendants respectively that these activities were a breach of the restrictive covenant embodied in paragraph 39 of plaintiffs’ lease. The landlord in turn notified the Woodbury Meat Company of plaintiffs’ complaint and demanded an explanation. Woodbury Meat Company in a letter to the landlord, dated February 18, 1960, in substance stated that their grocery and dairy items were only 10% of their total sales, and as such were permissible under paragraph 39 of plaintiffs’ lease. Thereafter, on February 25, 1960, the plaintiffs commenced this action.
The proof at the trial establishes, and the court finds, that Woodbury Meat Company has carried and still carries an extensive line of grocery and dairy products in its store. These products represent about $90,000 to $100,000 in purchases for a period from December 9, 1959 to December 31, 1960.
‘1 The general rule for construing restrictive covenants * * * in a lease is to so construe them as to carry out the intent of *406 the parties” (Bovin v. Galitzka, 250 N. Y. 228, 232) and “to achieve the obvious purpose for which they were inserted.” (Fulway Corp. v. Liggett Drug Co., 1 Misc 2d 527, 536.)
It is apparent that paragraph 39 of plaintiffs’ lease was included to prevent the landlord from leasing any part of the building to a business that would compete with that of the plaintiffs. The parties realized, however, that it is difficult to “ delimit and classify the articles which belong exclusively to one business ” (Peoples Trust Co. v. Schultz Novelty & Sporting Goods Co., 244 N. Y. 14, 20), and therefore by use of the language “ possession or sale of some * ® * merchandise * * * by other tenants” provided for “ some overlapping of merchandise”. Such overlapping here permitted could be only that which was a mere incident to another business and not “ a distinct branch of the competing business.” (Peoples Trust Co. v. Schultz Novelty & Sporting Goods Co., supra, p. 21.) Such interpretation is fortified by the language of paragraph 45 of Woodbury Meat Company’s lease, in which the meat market was given “ the right to sell other food items which are incidental to the main purposes ” of its business “ provided that the possession and sale of such food items shall be subject to the provisions of [par.] 39 of” plaintiffs’ lease.
This court finds that the purchase and sale of a varied and substantial number of grocery and dairy items, amounting to approximately $90,000 or $100,000 in purchases is more than the incidental sale of “ some ” such items but is in fact a “ distinct branch” of Woodbury Meat Company’s main business, and is in competition with the plaintiffs’ business (Peoples Trust Co. v. Schultz Novelty & Sporting Goods Co., supra, p. 22 ; Banos v. Winkelstein, 192 Misc. 130, 133 ; see, generally, Larchmont Drug Store v. 4915 Realty Corp., 278 App. Div. 954, affd. 303 N. Y. 845 ; Waldorf-Astoria Segar Co. v. Salomon, 109 App. Div, 65, affd. 184 N. Y. 584 ; Topol v. Smoleroff Development Corp., 264 App. Div. 164 ; Weinberg v. Edelstein, 201 Misc. 343 ; London v. Fitz-Roy Development Corp., 175 Misc. 417).
Accordingly, the Woodbury Meat Company will be enjoined from purchasing and selling a substantial and varied number of grocery and dairy items which amount to a distinct branch of their main business — a meat market on the premises herein involved. The lessor who placed a proper restriction on the Woodbury Meat Company by paragraph 45 of the latter’s lease, and who has not been shown to have had knowledge of or to have given approval to the Woodbury Meat Company’s activities, cannot now be held liable. Accordingly, the complaint as to 89th Jamaica Realty Co. should be dismissed, without costs.
*407 As the loss of profit claimed by the plaintiffs has not been adequately shown to be the result of Woodbury Meat Company’s breach of the restrictive covenant, the measure of damages will lie the rental value of the plaintiffs’ premises before and after the breach. (Kennedy v. Abarno, 277 App. Div. 883.) It has been established by competent expert testimony that the rental difference was about $175 per month, and although a “ court of equity speaks as of the date of its final decree ” (Camacho v. Burgos, 14 Misc 2d 680), this latter testimony only established plaintiffs’ damage for the period from January 1, 1960 to December 31, 1960. Therefore, the plaintiffs’ recovery will be limited to this period.
Accordingly, judgment is granted to the plaintiffs against the defendant Woodbury for $2,100, with costs.