RIALTO LUNCHEONETTE, INC., Plaintiff, *v.* 1481 BROADWAY CORPORATION and MILK RANCH, INC., Defendants.

Supreme Court, Special Term, New York County, April 5, 1939.

*Alger, Peck & Grafton* [*H. Kirby Grafton* of counsel], for the plaintiff.

*Otterbourg, Steindler & Houston* [*Charles A. Houston* of counsel], for the defendant 1461 Broadway Corporation.

*H., I. & L. Cohen* [*Hyman Cohen* of counsel], for the defendant Milk Ranch, Inc.

COTILLO, J. The plaintiff seeks a permanent injunction restraining an alleged violation of the restrictive covenants of a lease between it as the tenant and the defendant 1481 Broadway Corporation, the landlord. The plaintiff runs a luncheonette in the basement arcade of 1481 Broadway. In the lease it is provided as follows:

" *Use* (7). The tenant agrees that it will use the demised premises only as a *Luncheonette,* with fountain service, with or without an open front, wherein and whereat people may be served with food for consumption on the premises, from counters, but are not to be seated at tables.

" The Landlord agrees that it will not rent any other space in the basement of the premises for use as a luncheonette or restaurant, but it is agreed between the Landlord and the Tenant that the Landlord shall have the right to rent a store on the street floor together with the basement space, as a drug store and that the said druggist may serve food at a fountain or at a counter in the basement in the manner of drug stores."

The plaintiff took possession of the premises on January 29, 1936, and has been in possession continually from that date. On April 28, 1938, the defendant 1481 Broadway Corporation entered into a lease with the defendant Milk Ranch, Inc., for space in the basement about twenty feet distant from the plaintiff's premises for use as a drink stand. That lease provided as follows:

" The tenant agrees to use the demised premises for no other purpose except as a drink stand for the sale of hot and cold non-alcoholic beverages, ice cream products which may be consumed on the premises, prepared nuts, fruits and bakery foods to be sold for consumption off the premises only, gifts, souvenirs and candy. It is expressly understood that nuts are not to be prepared on the premises.

" It is expressly understood that the landlord has agreed not to rent any space in this concourse for use as a luncheonette or restaurant and that the demised space shall not be used by the tenant herein as a luncheonette or restaurant business or in any other way or manner violate the restrictive covenant hereinabove set forth.

" The landlord agrees that during the occupancy of the demised space by the tenant under this lease, it will not rent any other space in the concourse arcade as a drink stand. This, however, shall not be deemed to restrict the use of other space in the arcade for other businesses in which drinks are incidentally sold, such as luncheonette, restaurant, bar and grill, drugstore.

" It is agreed by and between the parties hereto that the character of the business to be conducted by the tenant has been a

distinct inducement for the landlord to enter into this lease with the tenant."

The businesses conducted by the plaintiff and defendant Milk Ranch, Inc., are essentially different. The plaintiff conducts a lunchroom where sandwiches, frankfurters, steaks, hamburgers, cooked eggs and other hot and cold dishes are sold for consumption on the premises, and in connection therewith the plaintiff maintains apparatus for cooking, toasting and heating the food, in addition to which it sells milk and ice cream. This business in recent years has become known as a " luncheonette," the definition of which might well be stated as a place for the serving of light lunches, lunches being commonly known as the service of solid foods between breakfast and dinner. On the other hand, the business of the defendant Milk Ranch, Inc., consists only of the sale of soft drinks and ice cream. The drinks are made chiefly of milk, and this business has acquired, in recent years, the name of " drink stand." The best proof of the difference in the businesses consists of the menus of plaintiff and the defendant Milk Ranch, Inc. The plaintiff's menu contains the following items:

" Chopped Sirloin Steak French Fried Potatoes
" Hot Roast Beef Sandwich
" Hot Baked Ham Sandwich
" Grilled Lamb Chops Veg and F.F. Pot.
" Grilled Delmonico Steak Veg. and F.F. Pot.
" Hot Turkey Sandwich Veg. and F.F. Pot.
" Scrambled Eggs and Sausages
" Grilled Frankfurters and Baked Beans
" Liver and Bacon Veg. and F.F. Pot.
" Grilled Baked Ham and Baked Beans," etc.

The menu of the defendant Milk Ranch, Inc., contains no items of solid food and consists merely of the following items:

" Milk Chocolate
" Buttermilk
" Milk
" Milk — Individual Bottle — Grade ' A '
" Jumbo Malted
" Orangeade
" Pineapple Drink
" Frozen Malted
  " The Drink you eat with a spoon
" Frosted Chocolate
" Acidophilus Milk
" Ice Cream Cone
  " Ski Hi
" Ice Cream — Plate "

The evidence, together with the language of the leases themselves, eliminate all questions in this case except the question whether or not the defendant Milk Ranch, Inc., is running a luncheonette or restaurant in contravention of the terms of the lease between the plaintiff and the defendant 1481 Broadway Corporation. To find in favor of the plaintiff in this case, in my opinion, would necessitate a strained construction of the nature of the business conducted by the defendant Milk Ranch, Inc. As the terms " luncheon " and " luncheonette " have acquired distinctive meanings in this community as places for the serving of foods, a holding that a place serving liquid refreshments only, even though they consist mostly of milk drinks, would be a finding not within the intention of the parties when they entered into the various leases. The word " luncheonette " is a combination of the word " luncheon " and diminutive suffix " ette." The latter is borrowed from the French and, when used in commercial English and added to a word, gives the meaning of " like " or " resembling," as illustrated in the word " leatherette." In most other uses, such as the terms cellarette, collarette, etc., it retains the diminutive meaning. (Funk & Wagnall's New Standard Dict.) Luncheonette, to use either the definition as indicated in commercial English or in the diminutive sense, could refer to nothing but a lunch or luncheon as defined by the same authority. It is thus defined: " Lunch (a) a light meal eaten between breakfast and dinner, a luncheon (2) U. S. a light repast between meals, and is derived from the English (Dict) word meaning a lump."

The record shows that the luncheonette as now operated in this city is a lineal descendant of the coffee pot, a product of the late lamented days of prohibition, which sprang into existence when a great number of restaurants and eating houses of note closed during that era. They were inaugurated for the purpose of supplying light meals or what is known in the restaurant trade as " short orders." The luncheonette logically followed in business centers to supply the light midday meals formerly obtained in restaurants.

The Milk Bar is an imitation of the various drink stands which followed the success of such adventures as Nedicks stands, and supplies nothing but liquids or their equivalent. The mere fact that milk, as all other liquids, may, in the terminology of the medical profession and dictionaries, be classified as food, cannot deprive the consuming public of its own definition. Milk to the man on the street means a liquid and not food. In popular usage the term " food " seems to imply solid material, such as meat, bread, etc.

In addition, the defendant Milk Ranch, Inc., has no facilities for either cooking or serving a luncheon as described above. The

plaintiff has these facilities. The mere fact that in the conduct of its business some of the articles sold by defendant Milk Ranch, Inc., might be said to overlap some of the articles sold by the plaintiff is not sufficient basis for a finding that there has been a violation of the terms of the lease. I do not think the facts in this case are any different from those set forth in *Peoples Trust Co.* v. *Schultz N. & S. G. Co.* (244 N. Y. 14), where the Court of Appeals held as follows: " The business of haberdashery and the business of selling toys, sporting goods and like articles are not similar although they may in some respects overlap. The same things might be sold in both stores to some extent. The purely incidental and occasional sale thereof would not be a breach of the agreement not to carry on a competing business. (*Breck* v. *Ringler,* 129 N. Y. 656; *Greenfield* v. *Gilman,* 140 N. Y. 168.) Names do not count. The substance must be considered. Who can delimit and classify the articles which belong exclusively to one business and may not be carried by another without destroying its character? Drug stores and candy stores both sell soda water and similar innocuous and lawful drinks. They also sometimes sell light lunches. The sales are of similar articles but are the businesses similar? Is a drug store or a candy store carrying on a business similar to a restaurant because they all serve and sell soft drinks and light lunches? * * * Here we find no covenant in the agreement sued on against using the premises for the sale of sporting goods. The question is whether the business of the subtenants taken as a whole was of the same or similar nature as that conducted by the defendant. While the subtenants were carrying on what would be generally known as a haberdashery and were also selling sporting goods such sale of sporting goods did not as matter of law transform their business from that of a haberdashery to that of a house for the sale of sporting goods. To a certain extent the business overlapped but the haberdashery did not lose its character-istics as such because it also incidentally carried and sold some articles similar to some of those sold by the defendant."

In view of the above, the court is constrained to hold that the service of drinks at the plaintiff's stand is merely incidental to the lunch trade which is plaintiff's essential business. Although the defendant Milk Ranch, Inc., is permitted to sell overlapping articles, the general nature of its business is not that of a restaurant or luncheonette. Upon all the evidence and exhibits introduced upon this trial the court finds in favor of the defendants.

Submit judgment.