Meier Steinbrink, Spec. Ref.
This is an action by plaintiff, a store tenant of the premises owned by the defendant Sandab Realty Corporation, hereafter referred to as landlord, against *7 the landlord and the individual defendants who are also store tenants of the premises. It seeks to enforce a negative covenant contained in plaintiff’s lease as follows: “ 48. Landlord covenants and agrees that it will rent no other space in the building to a restaurant or luncheonette. No application to existing tenancies.” Plaintiff’s term extends to January 14, 1972. In March, 1963, when the premises formerly occupied by a liquor store became vacant, the landlord leased them to the codefendants “ for the sale of doughnuts, coffee and soft drinks, for on and off-premises consumption.” The lease further provided: ‘ ‘ 48. Tenant shall bake and sell doughnuts along with coffee and soft drinks for consumption on and off premises but shall in no event prepare or sell sandwiches, salads or any food other than doughnuts and shall at no time conduct a luncheonette business in the premises or serve luncheons or meals. Tenant has been made aware of the existence of a luncheonette in the building, the lease of which forbids rental of other space for a luncheonette and tenant covenants it will do nothing in the demised premises to violate this covenant.” It has been stipulated that the individual defendants sell a variety of doughnuts and muffins with coffee and soft drinks for consumption on and off the premises; that there are 20 counter stools upon which customers may sit while consuming their purchases and that no other food is sold. The issue is whether such business violates the restrictive covenants, or more specifically is it the same or similar to “ a restaurant or luncheonette ” covered by the restrictive covenant. A question similar to the one here was involved in Rialto Luncheonette v. 1481 Broadway Corp. (170 Misc. 754). Justice Cotillo there pointed out that the term “luncheonette” is applied to a place for the serving of light lunches, lunches being commonly known as the service of solid food between breakfast and dinner. There, as here, the plaintiff had a varied and extensive menu of solid foods, sandwiches, roasts, fried and grilled foods, while the defendants’ business consisted only of the sale of soft drinks, especially milk and ice cream. Here the defendants’ business consists solely of the sale of doughnuts, muffins, coffee and soft drinks, and does not, in my opinion, constitute a luncheonette, and obviously is not a restaurant, hence their business is not covered by the restrictive covenant. It is immaterial that there is some overlapping in the business conducted by the two tenants. The covenant was not a restriction as to the sale of the items, but was one concerning the general character of the business as a luncheonette or restaurant. The term ‘ ‘ luncheonette ” was also considered in Weiss v. Mayflower Doughnut Corp. (130 N. Y. S. 2d 264, 268, affd. 285 App. Div. 1031), where *8 it is stated: ‘ ‘ What is a luncheonette ? The term ‘ luncheonette ’ has acquired a distinctive meaning in this community as a place where sandwiches, salads, quickly prepared hot food and nonalcoholic beverages are served.” A rather similar case was tried before me in October, 1957 (Lampidis v. Washington-Empire Corp., N. Y. L. J., Oct. 24, 1957, p. 9, col. 6), in which I held that a store for the sale of “ pizza ” and soft drinks was not violative of a restrictive covenant against a luncheonette. Accordingly, there will be judgment for defendants dismissing the complaint, but without costs.